## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Christine M. Arguello

Civil Action No. 14-cv-01186-CMA

GABRIEL ESPARZA,

      Applicant,

v.

JAMES FALK, Warden, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

This matter is before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. # 1) ("the Application") filed by Applicant Gabriel Esparza. Respondents have filed an Answer to Petition for Writ of Habeas Corpus (Doc. # 21) ("the Answer") and Mr. Esparza has filed a Reply to Respondents' Answer (Doc. # 25) ("the Reply"). After reviewing the record, including the Application, the Answer, the Reply, and the state court record, the Court FINDS and CONCLUDES that the Application should be denied and the case dismissed with prejudice.

## I.  BACKGROUND

Mr. Esparza is challenging the validity of his conviction and sentence in the Arapahoe County District Court case number 04CR1256. In direct appeal proceedings, the Colorado Court of Appeals summarized the factual background of Mr. Esparza's conviction as follows:

1

Defendant, Gabriel Esparza, appeals his judgment of conviction from the Arapahoe County District Court, entered upon a jury verdict, for first degree murder after deliberation of Tina Esparza, his estranged wife, aggravated motor vehicle theft, and violation of a criminal restraining order. We affirm.

In December 2003, five months before she was murdered, Tina Esparza discovered that defendant had been secretly videotaping her daughters in various states of undress with devices hidden in a bedroom and bathroom of the family home.  She notified law enforcement authorities, who filed sexual assault charges against defendant in Jefferson County, Case No. 03M6227, and obtained a protection order for herself and two of her daughters, which required defendant to vacate the family home and move to a separate resident.  The couple began the process of dissolving their marriage.

During the months following the separation, defendant was seen in the neighborhood of the family home, took his wife's truck from the parking garage at the Englewood Civic Center (ECC) where she worked, and violated the protection order in early May 2004 by sending flowers to his wife for Mother's Day under the daughters' names.  Shortly after noon on May 14, 2004, witnesses heard a loud noise come from the parking garage at the ECC, found Tina Esparza's body lying in a pool of blood on the floor of the parking structure, and saw a gray van speeding out of the garage. Defendant's wife was dead on arrival at Swedish Medical Center.  The following day, defendant turned himself in to the Clear Creek County Sheriff's Department after seeing the murder described in a newspaper and learning that he was wanted for the murder.

Through counsel at his trial, defendant did not deny shooting his wife but argued in both opening statement and closing argument that he was guilty only of reckless manslaughter because his actions were impulsive and unexpected, not premeditated.

*People v. Esparza*, No. 05CA1952, slip op. at 1-2 (Colo. App. Apr. 30, 2009) (Doc. # 8-7

at 3-4).  The judgment of conviction was affirmed on direct appeal.  *Id.*  On July 20,

2009, the Colorado Supreme Court denied Mr. Esparza's petition for writ of certiorari. (*See* Doc. # 1-2).

On December 7, 2009, Mr. Esparza filed in the state district court a postconviction motion pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure.  (*See* Doc. # 8-1 at 4).  Mr. Esparza also requested appointment of postconviction counsel, but the state district court did not appoint counsel and summarily denied his Rule 35(c) motion.  (*See* Doc. # 1-3).  On January 19, 2012, the Colorado Court of Appeals affirmed the trial court's order denying the Rule 35(c) motion. (*See* Doc. # 1-4 at 2).  On September 23, 2013, the Colorado Supreme Court denied Mr. Esparza's petition for writ of certiorari.  (*See* Doc. # 1-5).

On April 28, 2014, Mr. Esparza filed the § 2254 Application asserting seven claims for relief.  He asserts in Claim One that his Fourth Amendment rights were violated when he was arrested without a warrant and searched.  He contends in Claim Two that the trial court violated his Fourth Amendment rights by denying his motion to suppress evidence from invalid searches.  Mr. Esparza asserts in Claim Three that he was tried before a biased judge who should have recused himself in violation of his due process rights under the Fifth and Fourteenth Amendments.  He asserts in Claim Four that the trial court violated his due process rights under the Sixth and Fourteenth Amendments by making prejudicial evidentiary rulings.  He alleges in Claim Five that his due process rights were violated because the prosecution misled defense counsel and the trial court refused to hold a suppression hearing.  Mr. Esparza asserts in Claim Six that his due process rights were violated by prosecutorial misconduct.  Mr. Esparza finally contends in Claim Seven that he received ineffective assistance of trial counsel

3

because (a) counsel did not conduct a sufficient investigation into his casino alibi

defense; (b) counsel failed to secure a Gun Shot Residue expert to challenge the

State's interpretation of the CBI test results; (c) counsel did not represent him during the

motions hearing concerning a forced handwriting exemplar; and (d) counsel infringed on

his right to plead not guilty and to testify on his own behalf by admitting his guilt to the

jury in opening statements.  The Court previously entered an Order to Dismiss in Part

dismissing Claim 7(c) as unexhausted and procedurally barred.  (*See* Doc. # 19).

## II.  STANDARDS OF REVIEW

The Court must construe the Application and other papers filed by Mr. Esparza

liberally because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S.

519, 520-21 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

However, the Court should not be an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d

at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be

issued with respect to any claim that was adjudicated on the merits in state court unless

the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Mr. Esparza bears the burden of proof under § 2254(d).  *See*

*Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a

statement of reasons by the state court for rejecting the claim. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011). In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* at 784. Thus, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 784-85. Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* at 784. In other words, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court "must uphold the state court's summary decision unless [the Court's] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.*

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question the Court must answer under § 2254(d)(1) is whether the applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390

(2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta,

of [the Supreme] Court's decisions as of the time of the relevant state-court decision."

*Id*. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings
> in cases where the facts are at least closely-related or
> similar to the case *sub judice*.  Although the legal rule at
> issue need not have had its genesis in the closely-related or
> similar factual context, the Supreme Court must
> have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established

federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1).  *See id*. at

1018.

If a clearly established rule of federal law is implicated, the Court must determine

whether the state court's decision was contrary to or an unreasonable application of that

clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly
> established federal law if: (a) "the state court applies a rule
> that contradicts the governing law set forth in Supreme Court
> cases"; or (b) "the state court confronts a set of facts that are
> materially indistinguishable from a decision of the Supreme
> Court and nevertheless arrives at a result different from [that]
> precedent."  *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th
> Cir. 2006)] (internal quotation marks and brackets omitted)
> (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is
> commonly understood to mean 'diametrically different,'
> 'opposite in character or nature,' or 'mutually opposed.'"
> *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable
> application of clearly established federal law when it
> identifies the correct governing legal rule from Supreme
> Court cases, but unreasonably applies it to the facts.  *Id*. at
> 407-08.

*House*, 527 F.3d at 1018.

6

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry.  *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather that application must also be unreasonable."  *Id.* at 411.  "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law."  *Maynard*, 468 F.3d at 671.  Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.  [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 131 S. Ct. at 786 (internal quotation marks omitted).  In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  *Id.*  In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254."  *Maynard*, 468 F.3d at 671; *see also Richter*, 131 S. Ct. at 786 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

7

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S. Ct. 786-87.

The Court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and the Applicant bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court's analysis is not complete "[e]ven if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006). "Unless the error is a structural defect in the trial that defies harmless-error analysis, [the Court] must apply the harmless error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993) . . . ." *Id.*; *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (providing that a federal court must conduct harmless error analysis under *Brecht* anytime it finds constitutional error in a state court proceeding regardless of whether the state court found error or conducted

8

harmless error review).  Under *Brecht*, a constitutional error does not warrant habeas relief unless the Court concludes it "had substantial and injurious effect" on the jury's verdict.  507 U.S. at 637.  "A 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict." *Bland*, 459 F.3d at 1009 (citing *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)).  "Grave doubt" exists when "the matter is so evenly balanced that [the Court is] in virtual equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435.  The Court makes this harmless error determination based upon a review of the entire state court record.  *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply.  *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## III.  MERITS OF APPLICANT'S REMAINING CLAIMS

### A.  Claim One

Mr. Esparza alleges he was arrested without a warrant and searched in violation of the Fourth Amendment.  (Doc. # 1 at 5-7).  Specifically, he asserts that the trial court erred in failing to suppress evidence obtained by the search because the trial court incorrectly found that Mr. Esparza was validly arrested based on the restraining order violation.  (*Id.* at 6).  Mr. Esparza also contends that the trial court erred in finding, in the alternative, that even if the arrest was not valid, a good faith exception applied and thus exclusion of the evidence was not required, as explained in *Herring v. United States,*

129 S. Ct. 695 (2009).  (*Id.* at 7).

The Fourth Amendment protects against unreasonable search and seizure and is generally enforced through the exclusionary rule.  *See, e.g., Illinois v. Gates,* 462 U.S. 213, 254 (1983).  In *Stone v. Powell,* 428 U.S. 465 (1976), the United States Supreme Court limited federal habeas review of alleged Fourth Amendment violations.  In *Stone,* the Supreme Court held that

> [W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment Claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Id.* at 481-82.

The United States Court of Appeals for the Tenth Circuit has noted that "[a]lthough *Stone* announced a verbal standard, it failed to clothe the words 'opportunity for full and fair litigation' with any precise meaning."  *Gamble v. State of Okla.,* 583 F.2d 1161, 1164 (10th Cir. 1978).  Therefore, the Tenth Circuit has determined that the meaning of the phrase, "opportunity for full and fair litigation," "includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim."  *Id.* at 1165.  It also includes the full and fair evidentiary hearing contemplated by *Townsend v. Sain,* 372 U.S. 293 (1963).  *Id.*  Furthermore, it contemplates recognition and at least a colorable application of the correct Fourth Amendment constitutional standards.  *Id.*  "Thus, a federal court is not precluded from considering Fourth Amendment claims in habeas corpus proceedings where the state court wilfully refuses to apply the correct and controlling constitutional standards."  *Id.; see also Sanders v.*

10

*Oliver,* 611 F.2d 804, 808 (10th Cir. 1979).

In his state court proceedings, Mr. Esparza's counsel filed a motion to suppress evidence obtained from the search subsequent to his arrest.  (Doc. # 8-1 at 16).  After hearing the testimony of police officers regarding Mr. Esparza's arrest and the arguments of counsel, the trial court denied the motion to suppress, finding that the arresting officers had confirmed an active warrant through dispatch and that the seizure of Mr. Esparza was valid based on the restraining order violation.  (*See* State Court R., 2/24/05 Hrg. Trans.  at 393-484; 3/16/05 Hrg. Trans. at 495-574).

On appeal, the Colorado Court of Appeals addressed the merits of Mr. Esparza's Fourth Amendment claim as follows:

> Suppression rulings present issues of both law and fact. *People v. Alameno,* 193 P.3d 830, 834 (Colo. 2008).  "[W]e defer to the factual findings of the court so long as there is sufficient evidence in the record to support the findings, but we subject the trial court's legal conclusions to de novo review."  *People v. Arroya,* 988 P.2d 1124, 1129 (Colo. 1999).
>
> At the preliminary hearing, a deputy from the Jefferson County Sheriff's Office testified that he had been investigating the restraining order violation stemming from Tina Esparza's allegation that defendant had sent her flowers in her daughters' names.  After the deputy communicated with the flower shop, he determined that he had probable cause to arrest defendant.  The deputy discussed the situation with defendant over the phone on the day before the murder, indicating that defendant might be charged with violating the restraining order.
>
> On May 14, 2004, the day of the murder, when the deputy learned that Tina Esparza had been killed, he faxed an affidavit for an arrest warrant for the restraining order violation to the Jefferson County duty judge, who signed it and faxed it back to him at 6:05 p.m.  The portion of the form filled out by the deputy contains a checked box next to "AFFIDAVIT FOR ARREST WARRANT"; the portion apparently filled out by the judge contains a checked box next to "Probable Cause FOUND," but no mark appears in the box corresponding to "Arrest

11

Warrant Issued."

However, the only arrest warrant for violation of the restraining order found in the record is dated May 26, 2004. Nonetheless, an entry was made by the Colorado Crime Information Center (CCIC) at 7:05 p.m., after the judge approved the issuance of an arrest warrant, indicating that the warrant was issued. In reliance upon this computer entry, the Clear Creek County Sheriff arrested defendant when he turned himself in the next day, and pursuant to the arrest, searched him.

We first conclude that the trial court did not err in finding that defendant was validly arrested based on the restraining order violation. Although the judge did not check a box on the form presented to him, he expressly found that probable cause existed to arrest defendant for the restraining order violation, thus satisfying the formalities required for the issuance of an arrest warrant under Crim. P. 4.2. Defendant does not argue that the finding of probable cause was erroneous. Although the paper arrest warrant was apparently not issued at the time the judge approved the issuance of a warrant, the CCIC database correctly showed that defendant was wanted for a violation of the restraining order, supplying probable cause for defendant's arrest.

Since the arrest of defendant was valid, the search incident to the arrest was valid, and items seized in that search were admissible in defendant's subsequent murder trial, even though the arrest was for violation of the restraining order. An officer conducing a search incident to a lawful custodial arrest "may seize and examine weapons, contraband, or other articles which the officer reasonably believes to be related to criminal activity even though these articles do not directly relate to the offense for which the arrest itself was effected." *See People v. Bischofberger,* 724 P.2d 660, 665 (Colo. 1986).

Alternatively, even if defendant's arrest was not valid, the denial of his suppression motion is warranted under section 16-3-308, C.R.S. 2008, which provides that evidence shall not be suppressed if seized as a result of a good faith mistake or a technical violation. A good faith mistake is defined as "a reasonable judgmental error concerning the existence of facts . . . which if true would be sufficient to constitute probable cause." § 16-3-308(2)(a).

Here, the Clear Creek County Sheriff's Department, relying on the information in the CCIC database, arrested defendant in the belief that there was a warrant for his arrest. If in fact there was no such warrant, the sheriff's department made a good faith mistake as to its

existence.

Evidence seized in the custodial search need not be excluded if the arresting officers had a good faith, but erroneous, belief that an arrest warrant was in effect.  In *People v. Blehm,* 983 P.2d 779, 795-96 (Colo. 1999), the court applied the good faith exception to the exclusionary rule with respect to a search incident to the execution of an arrest warrant that had been vacated by the court unbeknownst to the arresting officers.  Because there was no indication that the officers were objectively unreasonable in relying upon their understanding that the warrant was still in effect, the suppression motion was denied.

Here, whether the failure to issue the arrest warrant was due to a fault of the court or negligence of Jefferson County deputy is not clear.  However, under *Herring v. United States,* ___ U.S. ___, 129 S. Ct. 695 (2009), the uncertainty does not determine the outcome on these facts.

In *Herring,* the United States Supreme Court extended the good faith exception to the exclusionary rule, as recognized in *Arizona v. Evans,* 514 U.S. 1 (1995), to a situation where a law enforcement agency, rather than a court, was responsible for an erroneous outstanding warrant remaining in the database. In *Herring,* the arresting officers relied on information from the database of another county's law enforcement agency indicating a valid warrant for the arrest of the defendant.  Although the arresting officers learned almost immediately after the arrest that the computer information was inaccurate, the contraband seized in the interim was not excluded. The Supreme Court emphasized that if the police had been shown to be reckless in maintaining a warrant system or had knowingly made false entries to lay the groundwork for a future arrest, the need for deterrence of such conduct would justify exclusion. ___ U.S. at ___, 129 S. Ct. at 703.  No such showing of recklessness or intentional entry of false information was made in this case, and therefore we conclude suppression was not required.

*People v. Fields,* 785 P.2d 611 ( Colo. 1990), on which defendant relies, is distinguishable from this case.  In *Fields,* not only was no arrest warrant issued for the arrest of the former parolee, who was charged with a crime based on contraband found in a search incident to his arrest, but also there was no authority or probable cause whatsoever to arrest him on the purported parole violation because his parole had expired.  In defendant's situation, however, there is no dispute that probable cause existed to arrest him for violating the restraining order.

Thus, the trial court's denial of the motion to suppress evidence seized at the time of defendant's arrest was proper.

(Doc. # 8-7 at 5-11).

Mr. Esparza challenges the state courts' factual findings that there was a valid warrant at the time of his arrest and that even if there was no valid warrant for his arrest, that there was a good faith mistake as to the warrant's existence.  Specifically, Mr. Esparza asserts that the factual finding that "the CCIC database correctly showed that defendant was wanted for a violation of the restraining order, supplying probable cause for defendant's arrest" was contrary to the testimony and evidence provided regarding the CCIC printout during the suppression hearing.  (*See* Doc. # 25 at 3-4).  Mr. Esparza also asserts that the state appellate court's alternative finding that there was a good faith mistake as to the existence of a warrant also was contrary to the testimony and evidence presented during the hearing.  (Doc. # 1 at 6-7; Doc. # 25 at 6).  He contends that the arresting officers' testimony established that they never verified the purported warrant in the CCIC printout, which demonstrates an actual showing of recklessness. (Doc. # 1 at 7).

Mr. Esparza bears the burden to refute the state courts' factual findings with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  The factual findings, which are presumed correct in a federal habeas proceeding, are supported by the state court record of the suppression hearing.  (*See* State Court R., 2/24/05 Hrg. Trans.  at 393-484; 3/16/05 Hrg. Trans. at 495-574).  The Court finds that Mr. Esparza has not pointed to anything in the hearing transcripts that clearly contradicts the state courts' factual findings.

The Court further finds that the state courts considered applicable law in deciding that the Fourth Amendment was not implicated by Mr. Esparza's search and seizure. Specifically, the state courts relied on federal and state case law applying federal constitutional standards and Fourth Amendment precedent in resolving Mr. Esparza's claim.  (*See* State Court R., 3/16/05 Hrg. Trans. at 573 (citing *People v. Bischofberger,* 724 P.2d 660, 662-65 (Colo. 1986) (relying on federal Fourth Amendment standards relating to a search incident to a lawful custodial arrest)).  (*See also* Doc. # 8-7 at 8-9) (citing *People v. Blehm,* 983 P.2d 779, 795-96 (Colo. 1999) (relying on federal Fourth Amendment principles concerning the "good faith" exception to the exclusionary rule) and (citing *Herring v. United States,* 555 U.S. 135 (2009) (extending the good faith exception to the exclusionary rule to a situation where a law enforcement agency was responsible for an erroneous outstanding warrant remaining in the database)).

Accordingly, the Court finds that the state court proceedings sufficed to provide Mr. Esparza with an opportunity for full and fair litigation of his claim.  *See Smallwood v. Gibson,* 191 F.3d 1257, 1265 (10th Cir. 1999) (holding that petitioner was not entitled to habeas review of Fourth Amendment claim where petitioner's trial counsel informed the trial court of the factual basis for a Fourth Amendment claim, appellate counsel presented the issue to the state appellate court on direct appeal, and the state courts' "thoughtfully considered the facts underlying petitioner's Fourth Amendment claim" but rejected it on the merits by applying appropriate Supreme Court precedent).  Mr. Esparza's mere disagreement with the result of his suppression hearing does not demonstrate that the state courts failed to recognize, or wilfully ignored, controlling legal standards.  *See Gamble,* 583 F.2d at 1165.  Thus, the Court finds that Mr. Esparza is

15

not entitled to federal habeas relief for his Fourth Amendment claim.  Accordingly, Claim One will be dismissed.

### B.  Claim Two

Mr. Esparza alleges in Claim Two that the state trial court violated his Fourth Amendment rights by denying his motions to suppress evidence seized from invalid searches of two residences.  (Doc. # 1 at 8-14).  Mr. Esparza contends that the trial court wrongfully found that probable cause existed because the trial court identified an "incomplete, and therefore incorrect, legal standard" and considered irrelevant evidence during the suppression hearing.  (*Id.* at 9-12).  He also contends that the state courts misapplied federal law in finding that the search warrants were particular enough to prevent an exploratory search.  (*Id.* at 12-14; Doc. # 25 at 6-9).

As explained above, Mr. Esparza may not obtain federal habeas relief if the state court proceedings provided him with an opportunity for full and fair litigation of his Fourth Amendment claim.  *See Stone,* 428 U.S. at 494.  Respondents assert that Mr. Esparza's Fourth Amendment claim has been litigated in the sate courts and, therefore he had a full and fair opportunity to litigate Claim Two.  (Doc. # 21 at 13).

As substantiated by the record, Mr. Esparza filed separate motions to suppress any evidence seized at his residence and at his sister's residence because the affidavits failed (1) to provide a sufficient nexus between Tina Esparza's murder, the places to be searched, and the things to be seized; and (2) to satisfy the particularity requirement of the Fourth Amendment.  (*See* Doc. # 8-1 at 16-17; Doc. # 1 at 9, 12-14).  After full briefing and an evidentiary hearing on the motions, the trial court denied both motions to suppress, finding that there was probable cause for the searches because the

16

"supporting affidavits do establish a fair probability that contraband or evidence of the

subject crime or crimes would be found there."  (State Court R., 4/27/05 Hrg. Trans. at

890- 935).  The trial court further found even assuming that the affidavits were

insufficient, that the police officers were operating under a good faith exception to

reasonably believe that they were utilizing valid search warrants to seize the contents of

the safe.  (*Id.* at 936-38).

The Colorado Court of Appeals concluded "that the detective's affidavit provided

a substantial basis to establish probable cause that the searches would yield material

evidence for use in a criminal prosecution."  (Doc. # 8-7 at 13).  The Court of Appeals

further found that the affidavit

> describes the appearance of a motive for defendant to kill his
> wife, his previous act of taking her truck from the ECC
> parking lot, the precautions she took there out of concern for
> her safety, his violation of the restraining order, and his
> apparent plans to disappear coincident with the murder.
> These are not merely vague allegations; rather they
> establish a fair probability that defendant engaged in a
> specific crime at a specific time and a reasonable basis for
> believing that the evidence of the crime would be located at
> defendant's home and in his safe.  *See People for
> Kazmierski,* 25 P.3d 1207, 1211-12 (Colo. 2001) ("A court
> analyzes the sufficiency of a search warrant in terms of time,
> crime, objects, and place.").

(*Id.*).

The Court of Appeals also rejected Mr. Esparza's argument that the warrant

failed to describe the items to be seized with sufficient particularity.  The state appellate

court specifically found that the "addendum to the warrant listed twenty-two items that

could be relevant in investigating the crime, and there is no evidence that the police

intended to, or did in fact, conduct a 'general, exploratory rummaging' in defendant's

17

belongings." (Doc. # 8-7 at 14).  Lastly, the Court of Appeals rejected Mr. Esparza's

contention that the police officers did not have the authority to open the safe seized

from his sister's home.  (*Id.* at 14-15).

The Court first finds that the state court proceedings sufficed to provide Mr.

Esparza with an opportunity for full and fair litigation of this Fourth Amendment claim.

*Gamble,* 583 F.2d at 1165.  Further, Mr. Esparza has pointed to no authority mandating

reversal but ignored by the state courts, and this Court has found none.  *See id.*  Finally,

the Colorado state courts relied on state and federal case law that was solidly based in

Fourth Amendment precedent set forth by the United States Supreme Court.  (*See*

State Court R., 4/27/05 Hrg. Trans. at 933-938).  (*See also* Doc. # 8-7 at 11-15 (citing

*Coolidge v. New Hampshire,* 403 U.S. 443, 467 (1971) (setting forth Fourth Amendment

requirements for search and seizure); *People v. Roccaforte,* 919 P.2d 799, 803 (Colo.

1996) (explaining the particularity requirement of the Fourth Amendment); *People in*

*Interest of D.F.L.,* 931 P.2d 448, 452 (Colo. 1997) (noting that "federal courts have

consistently applied the general proposition that a container found within a dwelling or

residence that is subject to a validly issued warrant may be searched by law

enforcement officers if it 'is large enough to contain the contraband or evidence that [the

officers] are looking for.'")).  Under this precedent, the Colorado Court of Appeals

proceeded to determine that, based on the entire record before it, there was no

constitutional concerns present with regard to the searches of the residences.

The Court finds that Mr. Esparza has failed to present any well-pled facts from

which it can be inferred that the state courts failed to recognize or wilfully refused to

apply the correct and controlling constitutional standards in this regard, and no such

18

evidence is apparent from the record.  *See Gamble,* 583 F.2d at 1165.  Mr. Esparza

merely disagrees with the result, and would like the Court to reconsider these issues *de*

*novo.*  However, that is not the Court's function nor an appropriate review to be

undertaken in a federal habeas proceeding.  Accordingly, Mr. Esparza is not entitled to

federal habeas review of his Fourth Amendment claim, and Claim Two will be

dismissed.

### C.  Claim Three

Mr. Esparza contends that his Fifth and Fourteenth Amendment due process

rights were violated because he was tried before a biased judge who should have

recused himself.  (Doc. # 1 at 14-16).  Mr. Esparza alleges the "trial court was clearly

wrong in finding that [the motion to disqualify] contained 'only opinions, conjecture, and

conclusory allegations'" and that the "Court of Appeals erroneously found that 'prejudice

against the lawyer for the defendant does not require recusal.'"  (*Id.* at 15-16).

To demonstrate a violation of due process because of judicial bias, a claimant

must show either actual bias or an appearance of bias.  *Bixler v. Foster,* 596 F.3d 751,

762 (10th Cir. 2010).   "The standard is purely objective, and [t]he inquiry is limited to

outward manifestations and reasonable inferences drawn therefrom."  *United States v.*

*Gambino-Zavala,* 539 F.3d 1221, 1228 (10th Cir. 2008) (alteration in original) (quoting

*United States v. Nickl,* 427 F.3d 1286, 1298 (10th Cir. 2005) (internal quotation marks

omitted).  In addition, "[a]lthough a judge's remarks during the course of a trial may be

'critical,' 'disapproving,' or 'hostile' to a party, usually they will not support a partiality

charge."  *Nickl,* 427 F.3d at 1298 (quoting *Liteky v. United States,* 510 U.S. 540, 555

(1994).  "[J]udicial rulings alone almost never constitute a valid basis for a bias or

19

partiality motion." *Liteky,* 510 U.S. at 555.  "Thus, 'adverse rulings cannot in themselves

form the appropriate grounds for disqualification.'"  *Nickl,* 427 F.3d at 1298 (quoting

*Green v. Branson,* 108 F.3d 1296, 1305 (10th Cir. 1997).  Finally, to show actual bias,

the applicant must present "compelling" evidence.  *See Fero v. Kerby,* 39 F.3d 1462,

1478 (10th Cir. 1994) (in upholding dismissal of a habeas claim involving judicial bias,

the court stated that "[d]isqualification of a judge for actual bias or prejudice is a serious

matter and should only be required when the evidence is compelling") (citation omitted).

On direct appeal, Mr. Esparza identified three instances of judicial bias: (1) the

trial judge held an important hearing without Mr. Esparza or his counsel in which the

merits of defense objections to forced handwriting samples were discussed with the

prosecution; (2) the trial judge did not appropriately discipline the prosecution for ex

parte communications; and (3) the trial judge repeatedly ruled in favor of the

prosecution and rescinded decisions favorable to the defense.  (*See* Doc. # 8-2 at 22-

23; Doc. # 8-7 at 17-20).

After setting forth the legal standard for disqualification, the Colorado Court of

Appeals rejected Mr. Esparza's claim and found that even assuming, without deciding,

that Mr. Esparza's attorneys' two affidavits attached to the motion to disqualify were

sufficient to "verify" the motion under state statutes, the motion and affidavits failed to

state facts showing the existence of grounds for disqualification.  (*See* Doc. # 8-7 at 16).

The state appellate court further rejected Mr. Esparza's allegation that the trial judge

held an "ex parte" motions hearing regarding Mr. Esparza's handwriting sample

because the record demonstrated that Mr. Esparza had notice of the hearing but failed

to attend.  (*Id.* at 17).  The state appellate court further found that the trial judge's ruling

on the handwriting exemplar did not demonstrate hostility, ill will, or an absence of impartiality. (*Id.*).  The Colorado Court of Appeals also rejected Mr. Esparza's allegation that the trial judge was biased because he did not appropriately discipline the prosecution for ex parte communication with defense witnesses.  The state appellate court found that (i) the judge did reprimand the prosecutor for contacting the witnesses to tell them that they were not needed at the hearing; and (ii) the prosecutor's contact did not prejudice Mr. Esparza.  (*Id.* at 18-19).  Finally, the Colorado Court of Appeals rejected Mr. Esparza's allegations that the trial judge displayed a "skeptical attitude" toward defense counsel while behaving favorable to the prosecution.  The state appellate court first found that this argument was entirely conclusory.  (*Id.* at 19).  However, even assuming the allegations were true, the state appellate court further determined that recusal was not required because Mr. Esparza failed to make a showing of hostility, ill will, or absence of impartiality.  (*Id.* at 20).

Mr. Esparza contends that he was denied his right to an impartial tribunal based on the trial judge's rulings regarding the prosecution's ex parte communications and the alleged introduction of false or erroneous testimony.  (Doc. # 1 at. 15-16; Doc. # 15 at 11-12).  These allegations are insufficient to show actual bias or an appearance of bias. *See Liteky,* 510 U.S. at 555 ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion").  None of the trial judge's rulings suggested a prejudgment of guilt or exhibited antagonism toward Mr. Esparza himself.  *See Liteky,* 510 U.S. at 555-556 ("[A] judge's ordinary efforts at court-room administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune [from charges of bias] . . . [and the defendant failed] to point to any conduct that

21

arguably reveals an opinion of favoritism or antagonism as to make fair judgment impossible."). Further, the Colorado Court of Appeals' decision did not run afoul of any controlling Supreme Court precedent. Thus, Mr. Esparza has failed to demonstrate that he was deprived of due process and a fair trial by judicial bias. Therefore, he is not entitled to habeas relief on this claim, and Claim Three will be dismissed.

### D.  Claim Four

Mr. Esparza alleges that the state trial court violated his due process rights under the Sixth and Fourteenth Amendments by making prejudicial evidentiary rulings. (Doc. # 1 at 16-19). Specifically, he contends that the trial court erred in the manner in which it admitted evidence regarding the Jefferson County sexual assault charges and allegations against Mr. Esparza. (*Id.*).

Generally, state law questions about the admissibility of evidence are not reviewed in federal habeas proceedings. *Moore v. Marr,* 254 F.3d 1235, 1246 (10th Cir. 2001). A federal court "may not interfere with state evidentiary rulings unless the rulings in question rendered 'the trial so fundamentally unfair as to constitute a denial of federal constitutional rights.'" *Id.* (quoting *Tucker v. Markowski,* 883 F.2d 877, 881 (10th Cir. 1989); *see also Payne v. Tennessee,* 501 U.S. 808, 825 (1991) (evidence violates due process only when it is so unduly prejudicial that it renders a trial fundamentally unfair). The United States Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States,* 493 U.S. 342, 352 (1990). Furthermore, "because a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self-restraint." *Duckett v. Mullin,* 306 F.3d 982, 999

22

(10th Cir. 2002) (internal quotation marks and citation omitted).  The Court's "[i]nquiry into fundamental fairness requires examination of the entire proceedings."  *Le v. Mullin,* 311 F.3d 1002, 1013 (10th Cir. 2002) (per curiam). Moreover, a state court's admission of evidence of prior crimes, wrongs or acts will only be disturbed if the "probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denies [applicant] due process of law."  *Hopkinson v. Shillinger,* 866 F.2d 1185, 1197 (10th Cir. 1989), *overruled on other grounds by Sawyer v. Smith,* 497 U.S. 227 (1990).

Before Mr. Esparza's trial, the prosecution filed a notice of intent to introduce evidence of Mr. Esparza's alleged sexual assault of Tina Esparza's daughter.  (Doc. # 8-7 at 20).  The prosecution maintained that the Jefferson County sexual assault charges and allegations were probative of Mr. Esparza's motive and intent for the murder of Tina Esparza, and should be admitted as res gestae evidence or as prior bad acts under Colo. R. Evid. 404(b).  (*See* State Court R., 4/15/05 Hrg. Trans. at 739-750). After hearing the arguments of counsel, the trial court found that the evidence was "integral and highly probative for the fact finder to understand the situation involving [Mr. Esparza and his estranged wife]" and "relevant on the issues of the defendant's intent, motive, preparation, plan, knowledge, and also, issues relating to identity." (*Id.* at. 780-83).  Prior to voir dire, the trial court reiterated its ruling that the Jefferson County case charges and basic allegations were admissible.  (*See* State Court. R., 7/11/05 Hrg. Trans. at 1139-42).  During opening statements and throughout trial, Mr. Esparza's counsel objected to the prosecution's presentation of evidence regarding the Jefferson County case.  (*See e.g., id.* at 1295; 7/13/05 Hrg. Trans. at 1560-71, 1688-90; 7/14/05

Hrg. Trans. at 1795-1803, 2029).

On direct appeal, Mr. Esparza argued that the manner in which the evidence was admitted at trial constituted prejudice entitling him to a mistrial.  (Doc. # 8-2 at 31-43; Doc. # 8-7 at 23-29).  Specifically, he argued that the trial court should not have permitted testimony about the content of the videotapes found in the family home or other testimony concerning specific facts of the Jefferson County case; that the trial court ignored prosecutorial misconduct; that the trial court wrongfully denied him a hearing on the issue; and that the admission of the evidence entitled him to a mistrial. (*Id.*).

The Colorado Court of Appeals disagreed that the introduction of the allegations of the sexual assault case denied Mr. Esparza due process.  First, the Court of Appeals found that the evidence was relevant to motive and intent because "Tina Esparza had caused sexual assault charges to be filed against him in Jefferson County arising from the secret videotaping that occurred in the family home; as a result of the charges, a protective order was obtained preventing defendant from contacting his wife or her daughters; the violation of the restraining order had been reported to the authorities and was coming up for a hearing; the sexual assault charges were being prosecuted; and Tina Esparza was a potential material witness."  (Doc. # 8-7 at 22).  The Court of Appeals further found that the sexual assault charges and allegations were "presented as part of a sequence of events leading up to the murder."  (*Id.* at 22-23).  Finally, the Court of Appeals found that the underlying sexual assault case was not unfairly prejudicial.  (*Id.*).

The Colorado Court of Appeals further determined that Mr. Esparza was not

24

entitled to a mistrial because the manner of presentation of the allegations of the sexual

assault charge was not unfairly prejudicial.  Specifically, the state appellate court

explained in detail as follows:

> Defendant argues that the court abused its discretion by
> failing to enforce its pretrial ruling that only the charge and the
> "basic allegations" in the Jefferson County sexual assault case
> were admissible.  At trial, the parties debated the scope of the
> phrase "basic allegations," prompting the court to clarify its ruling.
> On appeal, defendant argues the trial court's rulings were intended
> to exclude any testimony about the content of the videotapes, as
> opposed to the charges arising out of the making of the videotapes
> and that the trial court failed to enforce its own ruling.

> During opening argument, the prosecution related how
> defendant's wife discovered the video recording equipment in the
> family home and reported it to the police, and described the
> observations made by officers from the Jefferson County Sheriff's
> Department when they conducted an investigation.  Defendant's
> objection to the statement was overruled and the prosecution
> continued:

>> And that deputy looks into the attic and he sees cables,
>> cables that run from the fan in the girls' bathroom across the
>> attic and down to a VCR in the master bedroom.  VCR tapes
>> are found, and on some of those tapes there are images of
>> [one daughter] at the age of about 17.  She is undressed,
>> she is naked.  Pictures of her in her bathroom.  Pictures of
>> her naked then in her bedroom.

> Two days later, when the prosecution called a number of
> witnesses to testify about the videotaping, the defense objected
> again to the presentation of evidence relating to the contents of the
> videotapes.  The court then explicitly ruled that the fact of the secret
> videotaping was admissible, but that references to what the
> stepdaughter was doing in the tapes and whether or not she was
> clothed were unfairly prejudicial and potentially confusing to the
> jury.  After this explicit ruling, defendant points to no references by
> the prosecution that violated the order.  Moreover, contrary to the
> suggestion in defendant's opening brief, we find no indication in the
> record that the videotapes were entered into evidence or even
> offered to be entered into evidence.

25

Nor do we find evidence that the prosecution violated the court's orders made at the preliminary hearing as made explicit at trial. The prosecution presented testimony from Officer Lee Hoag, who had viewed three of the videotapes, and the sister of the victim, who had viewed brief segments of two of the videotapes. Officer Hoag testified that one of the videotapes contained spliced segments depicting defendant's stepdaughter "coming in and doing similar activities that she wouldn't have all done on the same day" and one segment of defendant manipulating the video camera with a toilet brush.  The victim's sister testified only that the two videotapes she viewed "very briefly" show defendant's stepdaughter in the bathroom and bedroom.

The prosecution also presented the charges from the Jefferson County case, which included an officer's reciting the allegation that defendant "unlawfully and knowingly subjected, observed, or took a photograph of the intimate parts of [his stepdaughter] without the victim's consent in a situation where the victim had a reasonable expectation of privacy for the Defendant's own sexual gratification in violation of 18-3-404-1.7 from the Colorado Revised Statues."  The charge was specifically deemed admissible in the preliminary hearing.

We conclude that the references to the content of the videotapes in the prosecution's opening statement and the testimony presented did not unfairly prejudice defendant or contradict the substance of the trial court's rulings.  Moreover, the court limited the prejudicial effect by excluding graphic references to specific content of the videotapes.

(Doc. # 8-7 at 24-27).

The Court finds that Mr. Esparza has not demonstrated that the trial court's decision to allow evidence of the alleged sexual assault charges and allegations was so overwhelmingly prejudicial that it resulted in a fundamentally unfair trial.  First, the evidence was relevant to explaining the facts leading up to Tina Esparza's murder and establishing Mr. Esparza's motive and intent.  *See Knighton v. Mullin,* 293 F.3d 1165, 1171 (10th Cir. 2002) (admitting evidence of petitioner's other crimes and bad acts was relevant to explain the "chain of events" leading up to the murder and the petitioner's

intent and motive).  Moreover, the trial court provided a limiting instruction that the testimony only "may be used as evidence for the purpose of showing intent, motive, preparation, plan, knowledge, and identity, and you should consider it as evidence for no other purpose." (*See e.g.,* State Trial R., 7/14/05 Hrg. Trans. at 1816).  Thus, it is clear from the state court record that the trial court instructed the jury to consider the evidence only for the specified, limited purpose of showing motive or intent and for no other purpose.

Further, the state trial court permitted only general references and excluded specific, graphic descriptions, which refutes Mr. Esparza's contention that his trial was rendered fundamentally unfair by the admission of evidence of the sexual assault case. *See e.g., Willingham v. Mullin,* 296 F.3d 917, 928-29 (10th Cir. 2002) (according deference to state court's admission of objectionable photograph as relevant, despite habeas petitioner's argument that photographs were unduly prejudicial and concluding that petitioner failed to demonstrate a due process violation).  Accordingly, the Court finds that the state appellate court's decision regarding the admissibility of this evidence was not contrary to, or involved an unreasonable application of, clearly established Federal law, nor is it an unreasonable determination of the facts.  Therefore, Mr. Esparza is not entitled to federal habeas relief.  Claim Four lacks merit and will be dismissed.

### E.  Claim Five

In Claim Five, Mr. Esparza contends that his due process rights were violated when the prosecution misled defense counsel and the trial court that it would not introduce specific facts of the Jefferson County sexual assault case.  (Doc. # 1 at 19).

27

He also asserts that the trial court erred in failing to hold a hearing concerning Mr. Esparza's motion to suppress evidence seized in the Jefferson County case. (Doc. # 1 at 19-20).

In general, habeas relief is available for prosecutorial misconduct only if the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974). But if the "challenged statements effectively deprived the defendant of a specific constitutional right," relief is available unless the violation can be "deemed harmless beyond a reasonable doubt." *Gipson v. Jordan,* 376 F.3d 1193, 1197 (10th Cir. 2004).

The Colorado Court of Appeals held that there was no prosecutorial misconduct that warranted a mistrial. (Doc. # 8-7 at 27-28). The state appellate court also determined that the state trial court did not err in failing to hold a hearing on Mr. Esparza's pretrial motion to suppress evidence because:

> the search of the family home occurred after defendant's wife reported his conduct to the police and with her consent. *See People v. Sanders,* 904 P.2d 1311, 1313 (Colo. 1995) (consent freely and voluntarily given eliminates the need for a warrant). Consent to a search may be given by a third party with "common authority" over the premises to be searched without violating a defendant's Fourth Amendment rights. *Id.* (quoting *United States v. Matlock,* 415 U.S. 164, 168-72 (1974). Thus, the officers did not need defendant's consent. Because the search was facially proper, the court did not err in denying a hearing on the motion to suppress.

(Doc. # 8-7 at 28-29).

To the extent Claim Five could be read as a Fourth Amendment claim, the claim is precluded by *Stone v. Powell,* 428 U.S. 465 (1976). The state court record demonstrates that Mr. Esparza had a full and fair opportunity to litigate this claim. Mr.

28

Esparza's attorney filed a motion to suppress any evidence relating to the search in the Jefferson County case.  (Doc. # 1 at 19; State Court R., 4/15/05 Hrg. Trans. at 782). The trial court did not rule on the motion prior to trial, but Mr. Esparza's attorney renewed the motion to suppress during trial.  (State Court R., 7/13/05 Hrg. Trans. at 1560, 1564-71, 1688-90; 7/14/05 Hrg. Trans. at 1862-74; 7/15/05 Hrg. Trans. at 2039-41.)  The trial court listened to counsel's arguments, disagreed with defense counsel's characterization, and denied suppression and a mistrial.  (*Id.,* 7/13/05 Hrg. Trans. at 1571, 1688-90; 7/14/05 Hrg. Trans. at 1862-74; 7/15/05 Hrg. Trans. at 2039-56).

Mr. Esparza also raised the issue on direct appeal and the Colorado Court of Appeals rejected the claim.  The state appellate court found that Tina Esparza's consent to search was given voluntarily and that officers obtained a valid consent to search, citing to *United States v. Matlock,* 415 U.S. 164 (1974).  (*See* Doc. # 8-7 at 28-29). Based on the record, the Court concludes that Mr. Esparza had a full and fair opportunity to litigate his Fourth Amendment claim in the state courts.  As a result, the Court is precluded from considering the claim based on *Stone.*

To the extent, Mr. Esparza's claim is not precluded by *Stone*, the Court finds that he is not entitled to habeas relief.  In the Application, Mr. Esparza argues that the state courts' reliance on *Matlock* was improper because it is distinguishable from his case. Mr. Esparza also claims that the warrantless search was invalid under *Georgia v. Randolph*, 547 U.S. 103 (2006).

The Court finds that Mr. Esparza is not entitled to relief on his due process claim because he fails to identify any clearly established federal law providing that the search was not facially proper.  Respondents are correct that *Georgia v. Randolph* does not

apply to Mr. Esparza's case.  In *Georgia v. Randolph*, the United States Supreme Court considered "whether one occupant may give law enforcement effective consent to search shared premises, as against a cotenant who is present and *states a refusal* to permit the search."  547 U.S. at 108 (emphasis added).  The Supreme Court specifically declined to "undercut" the holding in *Matlock* by "drawing a fine line," and stated the very narrow terms of its holding as follows:

> If a potential defendant with self-interest in objecting is in fact *at the door and objects,* the cotenant's permission does not suffice for a reasonable search, whereas the potential objector nearby *but not invited to take part in the threshold colloquy,* loses out.

*Id.* at 122 (emphasis added).

In the instant case, Mr. Esparza does not allege that he was invited to take part in the threshold request for consent to search.  Nor does Mr. Esparza allege that he objected to the search.  He merely alleges that he "was also present" and that "no evidence was introduced to show that he gave voluntary consent."  (Doc. # 1 at 20).  A failure to give consent does not equate to an express refusal to consent and the state court record does not reflect that Mr. Esparza was "at the door and object[ed.]"  Instead, the state court record demonstrates that the investigating officer responded to Tina Esparza's request to investigate a "family matter;" that he contacted her and her daughter outside of her residence; that she invited him into the house; that she took the officer upstairs to search the bedrooms, bathroom, and attic; that the officer passed Mr. Esparza on the stairs on his way to the second floor and had a conversation with him; and that after the search was completed, Mr. Esparza gave an interview with one of the officers.  (See State Court R., 7/13/05 Hrg. Trans. at 1686-1704; *see also* Doc. # 8-13 at

17-20).  Thus, Mr. Esparza's reliance on *Georgia v. Randolph* is misplaced because the facts alleged in his Application are sufficiently different from the limited holding in that case.

Mr. Esparza also has failed to demonstrate that the Colorado Court of Appeals relied on incorrect federal constitutional standards by following *United States v. Matlock* to determine whether the search was proper based on voluntary consent by a co-occupant who has authority over the property.  Based on the state courts' factual findings and United States Supreme Court precedent, the Court cannot find that the Colorado Court of Appeals applied a rule "contrary to" any current, materially distinguishable Supreme Court case, or that it "unreasonably applied" the governing Supreme Court law to the facts of this case.  *See Mitchell v. Esparza,* 540 U.S. 12, 17 (2003) ("A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from this Court is, at best, ambiguous").  Accordingly, Mr. Esparza is not entitled to federal habeas relief as to Claim Five, and Claim Five will be dismissed.

### F.  Claim Six

Mr. Esparza contends in Claim Six that prosecutorial misconduct violated his constitutional right to a fair trial.  (Doc. # 1 at 21-22).  Mr. Esparza asserts that the prosecution intentionally misled the defense by stating at a preliminary hearing that it intended to mention only the "charge and the basic allegations" of the Jefferson County sexual assault case, but then at trial presented evidence to support the allegations. (*Id.*).  Mr. Esparza further alleges that despite the trial court's limiting rule regarding the Jefferson County case, "the prosecution introduced all of the specific, highly prejudicial

31

facts of the untried charges throughout Mr. Esparza's trial." (*Id.*).

The clearly established federal law for purposes of a claim of prosecutorial misconduct is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168 (1986). *See Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (per curiam). In *Darden*, the Supreme Court explained that prosecutorial misconduct violates the Constitution only when the misconduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In order to determine whether prosecutorial misconduct rendered the trial fundamentally unfair, the Court must consider "the totality of the circumstances, evaluating the prosecutor's conduct in the context of the whole trial." *Jackson v. Shanks*, 143 F.3d 1313, 1322 (10th Cir. 1998). "[T]he *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker*, 132 S. Ct. at 2155 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Finally, prosecutorial misconduct claims are mixed questions of law and fact. *See Duckett v. Mullin*, 306 F.3d 982, 988 (10th Cir. 2002).

The Colorado Court of Appeals rejected Mr. Esparza's claim of prosecutorial misconduct as follows:

> The notice of intent to introduce res gestae or CRE 404(b) evidence states that the prosecution intended to present "[a]ll information relating to Jefferson County Court case 03M6227." The notice is appended with a "general summary" of the facts in that case comprised of a nine-page report by Officer Hoag, which includes a description of the video equipment and wiring found in the family home as well as the content of two videotapes. As noted, at the pretrial hearing the court ruled that evidence of the Jefferson County case and the "basic allegations" was admissible as res

gestae or under CRE 404(b).  As we have noted above, the trial
court excluded references to specific matter depicted in the
videotapes, and defendant points to no references which violated
the court's express rulings.  On this record, we see no prosecutorial
misconduct that warranted a mistrial.  *See People v. Prieto,* 124
P.3d 842, 851 (Colo. App. 2005) ("[A]lleged improprieties must be
reviewed in the context of the arguments as a whole and in light of
the evidence presented.")

(Doc. # 8-7 at 27-28).

The Court finds that Mr. Esparza fails to present any evidence, let alone clear

and convincing evidence, to overcome the presumption of correctness that attaches to

the state court's factual determinations that the prosecution did not intentionally mislead

the trial court and Mr. Esparza's attorneys and that the prosecution did not violate the

court's express rulings regarding the Jefferson County case.  Mr. Esparza argues that

the prosecution played a "semantic game" when it stated it would present the "basic

allegations" of the sexual assault case and that "allegations" only meant the charges

and not the evidence supporting the charges.  (Doc. # 1 at 22).  However, the state

court record provides no indication that the prosecution intentionally deceived Mr.

Esparza's counsel and the trial court.  Instead, the prosecution stated in its notice of

intent to introduce "all information related to" the Jefferson County case, and the notice

was appended with a "general summary" of the facts in that case from the officer's

report.  (*See* Doc. # 8-7 at 27; State Court R., 2/11/05 People's Notice of Intent to

Introduce Res Gestae Evidence and/or Evidence of Other Acts of the Defendant

Pursuant to CRE 404, at 190-250).  In addition, the prosecution represented that it

would elicit testimony regarding the "basic allegations," which the trial court ruled as

admissible.  (*See* State Court. R., 7/11/05 Hrg. Trans. at 1139-42).  Therefore, the

Court cannot find that the Colorado Court of Appeals' decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Mr. Esparza also fails to demonstrate that the decision of the Colorado Court of Appeals is either contrary to or an unreasonable application of clearly established federal law.  He does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result.  *See House*, 527 F.3d at 1018.  He also fails to demonstrate that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Richter*, 131 S. Ct. 786-87.  As noted above, "the *Darden* standard is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations.'" *Parker,* 123 S. Ct. at 2155 (quoting *Yarborough,* 541 U.S. at 664).  In light of this very general standard, the absence of any evidence or indication that the prosecutor intentionally misled the trial court and Mr. Esparza's attorneys and violated the trial court's rulings, the Court cannot conclude that Mr. Esparza's trial was fundamentally unfair.  Therefore, Mr. Esparza is not entitled to relief on this claim and Claim Six will be dismissed.

### G.  Claim Seven

In remaining Claim Seven, Mr. Esparza contends that he received ineffective assistance of counsel because (a) counsel did not conduct a sufficient investigation into his casino alibi defense; (b) counsel failed to secure a Gun Shot Residue expert to challenge the State's interpretation of the CBI test results; and (c) counsel infringed on

34

his right to plead not guilty and to testify on his own behalf by admitting his guilt in opening statements.  (Doc. # 1 at 22-27).

It was clearly established when Mr. Esparza was convicted that a defendant has a Sixth Amendment right to the effective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  Ineffective assistance of counsel claims are mixed questions of law and fact.  *See id.* at 698.  To establish that counsel was ineffective, Mr. Esparza must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense.  *See id.* at 687.  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  There is "a strong presumption" that counsel's performance falls within the range of "reasonable professional assistance."  *Id*.  It is Mr. Esparza's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances.  *See id.*  "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong."  *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).  Furthermore, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Under the prejudice prong, Mr.  Esparza must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*; *see also Richter*, 131 S. Ct. at 792 (stating that "[t]he likelihood of a different result must be substantial, not just

35

conceivable.").  In determining whether Mr. Esparza has established prejudice, the

Court must look at the totality of the evidence and not just the evidence that is helpful to

Mr. Esparza.  *See Boyd*, 179 F.3d at 914.  If Mr. Esparza fails to satisfy his burden with

regard to either prong of the *Strickland* test, his ineffective assistance of counsel claim

must be dismissed.  *See Strickland* at 697.

Finally, conclusory allegations that counsel was ineffective are not sufficient to

warrant habeas relief.  *See Humphreys v. Gibson*, 261 F.3d 1016, 1022 n.2 (10th Cir.

2001).

### (1) Failure to Investigate Casino Alibi and to Challenge CBI Test Results

Mr. Esparza contends in Claim 7(a) and (b) that he was denied the effective

assistance of counsel because counsel failed to investigate more thoroughly his casino

alibi defense and to challenge the CBI test results by hiring a Gun Shot Residue expert.

The Colorado Court of Appeals applied the two-part *Strickland* test in rejecting

Mr. Esparza's ineffective assistance of counsel claims as follows

#### B.  Investigation

Defendant also contends trial counsel was ineffective
because counsel failed to investigate his alibi properly by (1) failing
to obtain a casino surveillance tape, which would support his alibi,
before it was destroyed and (2) failing to call an expert on gun
powder transference as a witness.  We disagree.

According to the record, nine months before trial, the
prosecution in this case provided all the casino surveillance tapes in
its possession to trial counsel.

A week before trial, the prosecution interviewed a casino
security guard and learned for the first time that the security guard
had previously generated an internal report regarding one of the
tapes.  The prosecution obtained a copy of the report and faxed it
to trial counsel.

The report stated that, at a certain casino, a person loosely fitting defendant's physical description entered the casino; however, this other person's clothing did not match the description of defendant, his hair was styled differently, and he was not wearing a hat.

Trial counsel made the following representation on the record:

I can tell the Court that we contacted the casinos very early on in our investigation and asked them what they had as far as video surveillance.  And [the security guard] at that time did not disclose to us the existence of this report.

Trial counsel made a motion to the trial court to find a discovery violation, which the court denied.  Trial counsel then requested that the prosecution reformat a few of the tapes so they would be "formatted in a manner that [they could] watch them [because the tapes] were not so clear that you could even say somebody is most definitely [defendant] or not."  The court denied this request.  Trial counsel requested a continuance, which the trial court denied as well.

At trial, the prosecution admitted into evidence photographs of the person in the casino that the security guard viewed on the surveillance tape mentioned in his report.

We conclude the record plainly refutes defendant's claim. The record shows the prosecution turned over to trial counsel all the casino surveillance tapes for the relevant period and that none of the tapes were "destroyed."

Regarding the gun powder transference expert, to prevail on such a claim, defendant must identify an expert he would call at an evidentiary hearing who would present favorable testimony that would have been both available and likely to be successful at trial. *People v. Naranjo,* 840 P.2d 319, 325 (Colo. 1992); *see also James v. Borg,* 24 P.3d 20, 27 (9th Cir. 1994) (failure to present different defense does not show ineffectiveness where defendant fails to identify evidence counsel should have presented that would support a different defense).  He has not done so.  Thus, defendant has failed to carry his burden to show that such expert testimony existed, *see Naranjo,* 840 P.2d at 325, and a mere allegation that counsel should have investigated to find such an expert is insufficient to warrant a hearing, *see People v. Gandiaga,* 70 P.3d

523, 526 (Colo. App. 2002) (no prejudice where defendant was granted a hearing and neither presented evidence of witness's willingness to testify, nor made an offer of proof with respect to the substance, credibility, or admissibility of the anticipated testimony).

We therefore conclude defendant's claim, as pled, does not establish either prong of the *Strickland* standard. *See, e.g., Hill v. Lockhart,* 474 U.S. 52, 59 (1985) (if defendant claims counsel should have pursued a defense instead of a guilty plea, he must show defense would likely be successful at trial); *see also People v. Mills,* 163 P.3d 1129, 1132 (Colo. 2007) (where there was no evidence not-guilty-by-reason-of-insanity plea was appropriate, failure to seek such a plea does not constitute ineffective assistance of counsel).

Given that both the security surveillance tape and gun powder transference expert claims necessarily fail, we conclude the district court did not err in summarily denying defendant's Crim. P. 35(c) motion alleging ineffective assistance of trial counsel in this regard either.

(Doc. # 8-13 at 10-13).

Mr. Esparza fails to demonstrate that the state court's rejection of Claim 7(a) and (b) was contrary to or involved an unreasonable application of clearly established law. He fails to cite to any contradicting governing law set forth by the Supreme Court or any materially indistinguishable Supreme Court decision that would compel a different result with respect to his claims.

Mr. Esparza also fails to demonstrate that the state court's rejection of Claim 7(a) and (b) was an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Because the state court did not hold an evidentiary hearing as to Mr. Esparza's ineffective assistance of counsel claims, the Court evaluates "the factual record" made by his trial counsel. *Miller v. Champion,* 161 F.3d 1249, 1254 (10th Cir. 1998)

In the Application and the Reply, Mr. Esparza contends that it was clearly erroneous for the trial court to assume that Mr. Esparza's counsel timely requested casino videotapes that were properly formatted and that counsel's failure to challenge the CBI test results was unreasonable. (Doc. # 1 at 10-13; Doc. # 25 at 25-29). These arguments are belied by the state court's factual determination that the prosecution turned over to trial counsel all the casino surveillance tapes for the relevant time period, a factual determination the Court presumes to be correct under § 2254(e)(1). Further, a review of the state court record establishes that trial counsel had contacted the casinos very early on in the investigation, made a motion for a discovery violation for late disclosure of a casino report, and requested reformatting of the tapes. (*See* State Court. R., 7/7/05 Hrg. Trans. at 999-1015; 7/8/05 Hrg. Trans. at 1038-45, 1053-67). Mr. Esparza has made no showing that counsel's alleged failure to properly investigate the casino alibi defense was not based upon a valid strategic choice. *See Bullock v. Carver,* 297 F.3d 1036, 1047 (10th Cir. 2002) (finding that defendant bears "the burden of showing that counsel's action or inaction was not based on a valid strategic choice."). Accordingly, the "presumption that the attorney's decision was objectively reasonable," attaches to this decision, and it becomes "virtually unchallengeable." *United States v. Nguyen,* 413 F.3d 1170, 1181 (10th Cir. 2005).

Moreover, Mr. Esparza also fails to demonstrate the state court's determination that counsel made a strategic decision not to challenge the CBI test results by hiring a Gun Shot Residue expert is an unreasonable application of the deficient performance prong of the *Strickland* analysis. *See Strickland,* 466 U.S. at 690 (counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options

39

are virtually unchallengeable."). Moreover, Mr. Esparza does not adequately address the fact that the state appellate court also rejected the claim due to his failure to demonstrate prejudice under *Strickland*, which was based on his failure to present any evidence that would have resulted from the hiring of a Gun Shot Residue expert.

Mr. Esparza has not demonstrated that the state courts' rejection of his claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter,* 131 S. Ct. 786-87. As a result, the Court finds that the decision of the appellate court did not result in a decision that was contrary to, or involved an unreasonable application of *Strickland.* Thus, Mr. Esparza is not entitled to relief on Claim 7(a) and (b).

### (2) Admission of Guilt

Mr. Esparza contends in Claim 7(c) that he was denied the effective assistance of counsel because counsel admitted his guilt during opening statements. More specifically, Mr. Esparza contends that counsel's statement was the functional equivalent of "pleading him guilty to the lesser-included offense of second degree murder and undercutting any testimony he might try to give concerning his whereabouts and innocence." (Doc. # 1 at 26).

The Colorado Court of Appeals applied the two-part *Strickland* test and reasoned as follows in rejecting the claim:

A. Admission of Guilt

Defendant first contends, based on *People v. Bergerud,* 223 P.3d 686 (Colo. 2010), that trial counsel was ineffective because counsel improperly admitted defendant's guilt of the lesser crime of

manslaughter during opening and closing statements.  He contends that this was against his wishes and that he had maintained his innocence and wanted to put forward a defense based on an alibi. We disagree.

We note that *Bergerud* was decided several years after defendant's trial.  Before *Bergerud,* the decision of what defense to pursue was within the purview of trial counsel.  *See Steward v. People,* 179 Colo. 31, 34, 498 P.2d 933, 934 (1972).  Indeed, in *Steward*, our supreme court described what decisions fell within counsel's purview, and what decisions were reserved for the accused as follows:

> Defense counsel stands as captain of this ship in ascertaining what evidence should be offered and what strategy should be employed in the defense of the case . . . . "(a) Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for defense counsel.  The decisions which are to be made by the accused after full consultation with counsel are: (i) what plea to enter; (ii) whether to waive jury trial; (iii) whether to testify in his own behalf. (b) The decisions on which witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of the lawyer . . ."

179 Colo. at 34, 498 P.2d at 934 (quoting ABA Standards of Criminal Justice: Defense Functions 5.2(a)-(b)); *see Arko v. People,* 183 P.3d 555, 556 (Colo. 2008) ("[T]he decision whether to request jury instructions on lesser offenses is a tactical decision that rests with defense counsel . . . . "); *accord Florida v. Nixon,* 543 U.S. 175, 187, 189 (2004) (attorney was not "required to gain express consent before conceding [the defendant's] guilt because a defendant has "the ultimate authority" to determine only "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal") (quoting in part *Jones v. Barnes,* 463 U.S. 745, 751 (1983)).

At the time of defendant's trial, therefore, it was reasonable for his counsel to believe that the decision of what defense to pursue was within counsel's purview.  *See Dunlap,* 173 P.3d at 1062-63 ("In conducting the reasonableness inquiry, a court must make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct,

and to evaluate the conduct from counsel's perspective at the time.'") (quoting *Strickland*, 466 U.S. at 689); *People v. Trujillo*, 169 P.3d 235, 238 (Colo. App. 2007) ("A reviewing court must evaluate counsel's performance from his perspective at the time of the representation, ignoring the distorting effects of hindsight.") (citing *Davis v. People*, 871 P.2d 769, 772 (Colo. 1994)). Because we measure reasonableness based on the perspective of trial counsel at the time of the representation, *see Dunlap*, 173 P.3d at 1062-63, and we presume trial counsel's conduct was reasonable, *see Strickland*, 466 U.S. at 689-90 (courts are directed to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"); *People v. Rodriguez*, 914 P.2d 230, 294 (Colo. 1996), we conclude it was reasonable for trial counsel to believe the decision of what defense to pursue, including a defense of mitigation rather than alibi, fell within her purview.

Moreover, defendant does not contend trial counsel should have foreseen *Bergerud* and its implications for her decision-making in defendant's case.  The fact that three justices dissented in *Bergerud* supports the conclusion that it was reasonable for trial counsel not to have foreseen the result in that case.  *Bergerud*, 223 P.3d at 707.

Further, at the time of trial, we conclude trial counsel's decision to pursue a defense of mitigation was objectively reasonable.  At trial, the prosecution presented, as evidence of motive, testimony regarding a sexual assault case that had been brought against defendant.  The victim had alerted authorities to the sexual assault involved in this case and had assisted the police in their investigation of the case.  Other evidence established that, in the days leading up to the murder, defendant asked a relative to watch his dogs while he went on a "weekend retreat," rented a van, stole a gun, and checked into a local motel.  Hence, there was significant evidence of defendant's guilt that made reasonable trial counsel's decision to seek to mitigate the case.

We therefore conclude the district court did not err in summarily denying defendant's Crim. P. 35(c) motion in this regard.

(Doc. # 8-13 at 6-10.)

Mr. Esparza fails to demonstrate that the state court's rejection of the Claim 7(c)

was contrary to clearly established law. He alleges that *Bergerud*, although decided several years after his trial, was built upon "long-standing federal rights" which were violated and cites only to *Williams v. Taylor,* 529 U.S. 362 (2000) to support his argument. In *Williams,* the Supreme Court held that the state supreme court rendered a decision that was contrary to or an unreasonable application of clearly established federal law and that petitioner's right to ineffective assistance of counsel as defined in *Strickland* was violated where his counsel was incompetent at sentencing by failing to present mitigation evidence. *Id.* at 399. This case does not demonstrate contradictory governing law or a materially indistinguishable decision that would compel a different result in Mr. Esparza's case.

Mr. Esparza also asserts that counsel's opening statement foreclosed his right to testify during trial and relieved the prosecution of its burden of persuasion. A limited exception to *Strickland's* two-part test applies in situations that "are so likely to prejudice the accused that the cost of litigating their effect in the particular case is unjustified." *United States v. Cronic,* 466 U.S. 648, 658 (1984). One situation in which prejudice under *Strickland* will be presumed is when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Bell v. Cone,* 535 U.S. 685, 696 (2002) (quoting *Cronic,* 466 U.S. at 659). However, an attorney's strategic decision to concede certain points or even guilt of a lesser offense is not the equivalent of a complete failure to subject the prosecution's case to meaningful testing. *See Haynes v. Cain,* 298 F.3d 375, 381 (5th Cir. 2002) (concluding "strategic or tactical decisions are evaluated under *Strickland's* traditional two-pronged test" because *"Cronic"* is reserved only for those extreme cases in which counsel fails to present any defense.") Thus, the

43

state court's decision is not contrary to clearly established federal law.

Mr. Esparza also fails to demonstrate that the state court's rejection of Claim 7(c) was an unreasonable application of clearly established federal law.  The Court has little to add to the state appellate court's thorough analysis set forth above.  In short, the Court agrees that Mr. Esparza's counsel's decision to pursue a mitigation defense rather than alibi was within counsel's purview under Colorado Supreme Court and United States Supreme Court precedent.  (*See* Doc. # 8-13 at 6-10) (citing *Steward v. People,* 498 P.2d 933, 934 (Colo. 1972) (holding that what defense to present was within the purview of trial counsel) and (citing *Florida v. Nixon,* 543 U.S. 175, 187, 189 (2004) (holding that an attorney was not "required to gain express consent before conceding the defendant's guilt because a defendant has the ultimate authority to determine only whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal)).

Moreover, the Court agrees that the evidence against Mr. Esparza was significant and, in light of such evidence of guilt, counsel's decision to pursue a mitigation defense was not deficient performance and did not prejudice Mr. Esparza. *See e.g., Haynes,* 298 F.3d at 382-83 (petitioner could not establish prejudice under *Strickland* stemming from counsel's strategic concession, against petitioner's wishes, of facts amounting to second degree murder because evidence of guilt was overwhelming).  In any event, the state court's decision was "not so lacking in justification that there was an error well understood and comprehended by existing law beyond any possibility for fairminded disagreement." *Richter,* 131 S. Ct. 786-87.  As a result, Mr. Esparza is not entitled to relief on Claim 7(c).

44

## V.  CONCLUSION

In summary, the Court finds that Mr. Esparza is not entitled to relief on any of his

remaining habeas claims.

Under 28 U.S.C. § 2253(c)(2), this Court may issue a certificate of appealability

"only if the applicant has made a substantial showing of the denial of a constitutional

right."  Such a showing is made only when a prisoner demonstrates that jurists of

reason would find it debatable that a constitutional violation occurred, and that the

district court erred in its resolution.  Mr. Esparza has not made a substantial showing of

the denial of a constitutional right.  Therefore, a certificate of appealability is

denied.

Under 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this order

would not be taken in good faith and therefore *in forma pauperis* status will be denied

for the purpose of appeal.  *See Coppedge v. United States,* 369 U.S. 438 (1962).  If Mr.

Esparza files a notice of appeal, he also must pay the full appellate filing fee or file a

motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth

Circuit within thirty days in accordance with Fed. R. App. P. 24.

Finally, Mr. Esparza's request for copies of documents from the state court

record will be denied.  The state court record is currently in this Court's possession and

will be retained in the federal courts' possession pending the expiration of Mr. Esparza's

time to file a notice of appeal in the Tenth Circuit or during the pendency of any appeal

he may file in the federal courts.  Once his entire federal appellate process is complete,

the record will be returned to the Arapahoe County District Court and Mr. Esparza may

request copies of any documents in the state court record from that court for his state

court appellate proceedings.

Accordingly, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28

U.S.C. § 2254 (Doc. # 1) is denied and this case is dismissed with prejudice.  It is

**FURTHER ORDERED** that there is no basis on which to issue a certificate of

appealability under 28 U.S.C. § 2253(c).  It is

**FURTHER ORDERED** that leave to proceed *in forma pauperis* is denied without

prejudice to the filing of a motion seeking leave to proceed *in forma pauperis* on appeal

in the United States Court of Appeals for the Tenth Circuit.  It is

**FURTHER ORDERED** that Applicant's request (Doc. # 26) for copies of

documents from the state court record, filed on December 9, 2014, is denied.

DATED January 5, 2015.

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

46